# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JARVIS TAYLOR, Plaintiff, | ) ) ) |
| v. | ) Case No. 3:22-cv-620 ) Judge Trauger/Frensley |
| CORECIVIC OF TENNESSEE, LLC, et al., Defendants. | ) ) ) ) |

## REPORT AND RECOMMENDATION

This prisoner 42 U.S.C. § 1983 action is before the undersigned on defendants' motion for summary judgment. Docket No. 47. After reviewing the record and the briefs, for the reasons set forth below, the undersigned recommends defendants' motion for summary judgment be granted.

## I. BACKGROUND

Plaintiff Jarvis Taylor, an inmate currently confined at Trousdale Turner Correctional Center (TTCC), filed this pro se action alleging defendants used excessive force against him and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The allegations concern events that occurred on September 18, 2021, while plaintiff was incarcerated at TTCC. Plaintiff names as defendants Correctional Officers Sergeant M. Puebla, Lieutenant Craig Murray, Second Captain Kyla Mitchell, and f/n/u (Andrea) Borden. CoreCivic of Tennessee, LLC (CoreCivic), who employs certain of the individuals who work at TTCC, was dismissed as a defendant on September 20, 2022. Docket No. 6.

Plaintiff alleges the following in his complaint. Docket No. 1. On September 18, 2021, while housed at TTCC, he asked Borden if he could take a shower. She denied his request and proceeded to deploy an inflammatory agent against him. Id. He was then handcuffed and taken to

a different part of the housing unit where defendants flipped him onto the ground and one of them placed their foot on his neck. Id. at p. 7. Murray then placed his knee on the left side of his face, smashed the right side of his face into the ground, and slapped him repeatedly with his walkie-talkie. Id. He sustained various facial injuries and cuts on his left elbow as a result of the incident. Id. at p. 8. Immediately following the incident, he was taken to the medical unit where he received inadequate medical treatment. Id. at p. 7. He was then placed in segregation where on September 20, 2021, Mitchell and Murray prevented him from calling for and receiving further medical attention. Id. at pp. 7-8.

The district judge concluded that the complaint stated colorable excessive force claims against Borden, Puebla, Murray, and Mitchell in their individual capacities. Docket Nos. 5-6. She further concluded the complaint stated colorable claims for deliberate indifference to medical needs against Mitchell and Murray in their individual capacities based on the denial of medical treatment. Id.

All defendants, with the exception of Borden, now move for summary judgment. In support of their motion, defendants submitted their sworn declarations, as well as that of Martin Fink, then warden at TCCC; Incident Statements and Reports; a copy of the September 18, 2021, Tennessee DOC Accident/Incident/Traumatic Injury Report; and excerpts of Taylor's medical records.

Defendants move for summary judgment on the basis that any use of restrained force by defendants was applied in a good faith effort to maintain or restore security after Taylor acted defiantly and aggressively towards Borden and remained defiant and aggressive during the escort to the medical unit. Docket No. 47. They assert Taylor has failed to meet both the objective and subjective components of his claim based on the lack of serious injury. Id. They argue the minor

nature of Taylor's injuries demonstrates, at most, the use of minimal force in escorting him to the medical unit following his exposure to chemical spray. Id.

Taylor opposes the motion, arguing genuine issues of material fact exist and that the evidence, and/or lack thereof, is sufficient to warrant submission to a jury. Docket No. 59. Specifically, Taylor contends he did not become combative or aggressive with Borden but was merely persistent about wanting to take a shower and that he was being treated differently than others. Id. Taylor admits that Borden had already sprayed him with chemical spray before the other defendants arrived and that they did not witness Borden's use of chemical spray. Taylor denies resisting defendants' efforts to escort him to the medical unit following his exposure to chemical spray and that he inadvertently tripped and fell during escort to the medical unit. In support of his response, Taylor submitted a memorandum, a response to defendants' statement of undisputed facts, and his own affidavit.[1] Docket Nos. 59-61.

---

[1] On October 18, 2023, the day after Taylor filed his response, and after rigorous motion practice initiated by Taylor, the undersigned issued an order addressing the existence of video recordings of the September 18, 2021, incident. Docket No. 62 at pp. 4-5. The undersigned found that Taylor was entitled to discover any video recordings referenced, reviewed, or relied on in the Use of Force Summary and Review of the Incident. Docket No. 43-1. The undersigned ordered defendants to file a notice with the Court indicating whether they possessed any of the responsive video recordings; whether they were aware of the existence of such recordings; who possessed such recordings; whether they could facilitate the production of the recordings; and any basis for not producing the recordings to the plaintiff directly. The undersigned reserved ruling on Taylor's motion to serve subpoenas for the video recordings pending the defendants' notice on the matter. The undersigned stayed briefing on the motion for summary judgment pending resolution of the videotape discovery request. Docket No. 64.

Defendants filed their notice, informing the Court that although video footage once existed, neither they nor CoreCivic, Inc., currently possessed the responsive video footage in question. Docket No. 65. The notice stated CoreCivic was also unaware of any other third party that would possess the requested video footage, and therefore did not believe that it could facilitate its production. Docket No. 65. Defendants reiterated that they had previously informed the Court that despite a diligent search, they did not possess responsive video footage. Docket Nos. 65, 35, 44. They stated that it attempted to preserve

3

Defendants reply, reiterating their arguments. Docket No. 76

The evidence reveals the following. On September 18, 2021, Kyle Mitchell was working as a Shift Supervisor in Echo Charlie Unit at TTCC. Craig Murray was working as Assistant Shift

---

the video footage depicting the use of force incident involving Taylor and his subsequent transport to the medical unit long before this suit was filed pursuant to another request unrelated to this suit but had determined that its preservation efforts "inadvertently were unsuccessful." Docket No. 65 at p. 3. They stated CoreCivic's Facility Support Center (FSC) never received a hard copy of the footage and CoreCivic has been unable to locate a hard copy. Defendants state CoreCivic does not know and cannot determine whether a hard copy of the footage was ever made. CoreCivic also does not know and cannot determine whether the footage was ever exported to its management server, and even if it was, the footage no longer exists on that server. CoreCivic does not know and cannot determine from its server how long any footage remained on the server. Id.

Defendants stated in sum that while they do not dispute that video footage of the use of force incident and Taylor's subsequent transport to the medical unit at one time existed, neither they nor CoreCivic currently possess the requested video footage. They claim inadvertence and mistake as it relates to attempts to preserve video footage from the incident involving Taylor. CoreCivic was unaware of any other third party that currently would possess the requested video footage, and therefore does not believe it can facilitate the production of the requested video footage. Docket No. 65 at p. 5.

Taylor responded, noting defendants' notice contains no sworn testimony nor does it discuss or explain where the down-loaded CD footage went. Docket No. 67 at p. 2. Taylor notes CoreCivic had a duty to preserve the evidence, and were aware they had such a duty, as well as a duty to preserve the CD that they downloaded. He asks the Court to reject defendants' "lame" excuse and consider a spoliation instruction.

By order dated December 1, 2023, the undersigned granted in part Taylor's motion to direct the Marshals Service to serve subpoenas on non-party Tennessee Department of Correction to produce any video recordings in their possession referenced, reviewed or relied upon in the Use of Force summary and review of the September 18, 2021, incident involving Taylor and file any recordings responsive to the subpoena under seal with the Court. Docket Nos. 46, 68.

Defendants then provided the Court and Taylor with notice that the TDOC had informed defendants that following a search, it did not possess responsive video recordings and therefore did not have any documents to produce in response to the subpoena. Docket No. 70.

The undersigned lifted the stay on briefing defendants' motion for summary judgment and ordered the defendants to file their reply, if any, within 10 days. Docket No. 73.

Supervisor, and Manuel Puebla was working as Correctional Officer in the same housing unit. Docket No. 54 at Pg. ID ## 319, 324. At approximately 5:30 p.m., defendants responded to an incident involving Taylor after hearing a call over the radio from Andrea Borden, who had requested assistance after Taylor had ignored directives to allow her to secure the door to his cell. Id. Borden administered a burst of chemical spray to gain Taylor's compliance with her and with Correctional Officer Kajuan Green, who was assisting Borden with the incident. Docket No. 50 at Pg. ID ## 304-05. The use of force by Borden and Green was complete by the time defendants arrived, and they did not witness the use of chemical spray by Borden. Docket No. 49 at Pg. ID ## 320, 325. Both Borden and Green documented their observations in their Incident Statements. Docket No. 51 at Pg. ID ## 304-05.

After the incident, defendants started to escort Taylor to the medical unit, as is customary following the use of chemical spray. Docket No. 53 at Pg. ID #320, Docket No. 54 at Pg. ID # 325. Taylor continued to resist defendants' efforts to restore order and inadvertently tripped and fell onto the concrete floor during the escort to the medical unit. Docket No. 53 at p. 320; Docket No. 54 at Pg ID #325. Defendants then picked Taylor up from the ground and continued to transport him to the medical unit. Docket No. 53 at Pg. ID #320; Docket No. 54 at Pg ID #325.

Taylor was seen by a registered nurse approximately fifteen minutes after the incident involving chemical spray. Docket No. 51 at p. 309. The Health Services Provider's Report states that Taylor sustained a laceration that was less than an inch in length to his left eyebrow and that the laceration was cleaned and did not require stitches. He also sustained a small abrasion to his right cheek, a swollen bottom lip, and alteration in his skin integrity. Id. Taylor was placed in restrictive housing after the incident. Docket No. 51 at p. 306. As a result of the incident, Taylor was charged with defiance and later pled guilty to the offense. Docket No. 50 at p. 301.

On September 21, 2021, Taylor submitted a Sick Call Request, requesting medical attention and complaining that the right side of his face was numb. Docket No. 51 at p. 310. He was seen by medical personnel that day. He was provided antibiotic ointment for his facial abrasions and scheduled for x-rays to rule out the possibility of an orbital (eye socket) or zygome (cheekbone) fracture. Id. X-rays taken one week later on September 28, 2021, revealed no facial fractures and were otherwise normal. Id. at p. 312.

A medical progress record shows Taylor was seen by medical personnel one month later, on October 19, 2021, for follow up. Docket No. 51 at 313. Taylor complained of soreness to his left eye and right cheek. Physical exam showed a small healing bump to his left eyebrow. He had no facial numbness, no bleeding, and no vision issues, and was instructed to follow up as needed. Id.

### III.    DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "When opposing parties tell two different stories, [however,] one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [we need] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380, 127 S.Ct. 1769. However, "[f]acts that are not blatantly contradicted by [a video] recording remain entitled to an

interpretation most favorable to the non-moving party." *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011).

### 1. Excessive Force Claim against Puebla, Murray, and Michell

Defendants argue the record evidence does not contain a genuine issue of disputed fact as to the objective component of his excessive force claim. They argue the minor nature of Taylor's injuries show, at most, the use of minimal force in escorting him to the medical unit following his exposure to chemical spray. They contend the absence of any evidence showing that Taylor complained of more significant injuries to the nurse who evaluated him immediately after the incident defeats his excessive force claim. They finally argue Taylor has failed to establish the subjective component of an excessive force claim. The undersigned agrees.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation omitted). What constitutes the "unnecessary and wanton infliction of pain" varies based on the alleged constitutional violation. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

"This is a highly deferential standard. "It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322. "[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (quotation and alteration omitted). Evidence "that prison officials arguably erred in judgment" in deciding to use even deadly force "falls far short of a showing that there was no plausible basis for [their] belief that this degree of force was necessary." *Whitley*, 475 U.S. at 323. If the evidence shows only "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury." *Id.* at 322."

Therefore, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 Fed.Appx. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The court asks "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id.

Viewing the evidence in the light most favorable to Taylor, any use of force against him was used to maintain or restore security after the incident involving chemical spray. It is undisputed that defendants began to escort Taylor to the medical unit immediately following the chemical spray incident. Defendants attested that Taylor continued to resist their efforts and he inadvertently tripped and fell onto the concrete floor during the escort. Defendants completed transport to the medical unit where Taylor received immediate medical attention. It is also undisputed that Taylor was charged with a disciplinary infraction for defiance as a result of the incident involving chemical spray to which he pled guilty. Docket No. 50 at Pg. ID #301.

The undersigned concludes under the facts of this case, any use of force by defendants

9

Case 3:22-cv-00620 Document 79 Filed 03/08/24 Page 9 of 15 PageID #: 502

upon Taylor does not constitute cruel and unusual punishment. The undersigned notes that although Taylor sustained physical injury, the medical record evidence shows it was not severe; he sustained a left eyebrow cut, swollen bottom lip, and small abrasion to right cheek. Docket No. 49 at p. 6. When presenting to the medical unit following the chemical spray, the medical records do not demonstrate that Taylor referred to defendants or complained of being assaulted by them during his escort to the medical unit. The absence of any evidence reflecting that Taylor complained of more significant injuries or of a separate assault to the medical personnel who treated him undermines his excessive force claim.

Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officials, has been placed in jeopardy. *Whitley*, 475 U.S. at 312. *Cf. Leary v. Livingston Cnty.*, 528 F.3d 438, 443-45 (6th Cir. 2008) (de minimus use of force is not actionable under the due process clause; concluding that "karate chop kind of deal" to a pretrial detainee's neck that did not cause pain and that detainee did not perceive as a threat is a de minimus use of force.). The evidence in this case shows that, to the extent force was applied, it was applied in a good faith effort to maintain or restore discipline in a situation in which prison security and order had been placed in jeopardy. There is no evidence on this record suggesting defendants acted maliciously and sadistically to cause harm. *Hudson*, 112 S.Ct. at 999; s*ee also, Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (noting "a properly supported summary judgment motion is not defeated by self-serving affidavits").

The undersigned concludes defendants have met their burden to establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on Taylor's Eight Amendment excessive force claim. *Celotex,* 477 U.S. at 322. The undersigned therefore recommends summary judgment be granted. .

### 2. Deliberate Indifference to Medical Needs Claim against Mitchell and Murray

Mitchell and Murray move for summary judgment on Taylor's deliberate indifference to medical needs claim on the basis that they the evidence shows he received appropriate medical treatment after the use of force and that they did not deny or delay access to such treatment. The undersigned agrees.

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103, 97 S.Ct. 285. But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment. A constitutional violation arises only when the provider exhibits "deliberate indifference to a prisoner's serious illness or injury," id. at 105, 97 S.Ct. 285 (emphasis added), that can be characterized as "obduracy and wantonness" rather than "inadvertence or error in good faith," *Wilson*, 501 U.S. at 299, 111 S.Ct. 2321 (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ).

Deliberate indifference has both an objective and a subjective component, requiring "proof that the inmate had a sufficiently serious medical need and that [the] actor knew of and disregarded an excessive risk to the inmate's health or safety." *North v. Cuyahoga Cty.,* 754 F. App'x at 385, *citing Winkler v. Madison Cty.*, 893 F.3d 377, 380-81 (6th Cir. 2018). The objective component "requires that the inmate have a sufficiently serious medical need such that she is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quotation omitted). A medical need that has been diagnosed by a physician as "mandating treatment" is a sufficiently serious medical need. *Id.* The subjective component requires that officials had a "sufficiently culpable state of mind" of "deliberate indifference to inmate health or safety." *Id.*, *quoting Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

Deliberate indifference requires more than negligence but does not require proof that the

11

officials intended to cause harm. *Winkler*, 893 F.3d at 891. "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 447, *quoting Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Here, to the extent Taylor is asserting defendants denied him access to medical treatment on September 18, 2021, the day of the use of force at issue, the evidence does not establish or support such a claim. The evidence demonstrates Mitchell and Taylor transported Taylor to the medical unit following Borden's use of chemical spray. It is undisputed that Taylor received medical treatment immediately after the use of force against him, as medical personnel evaluated him and cleansed the laceration above his left eye. Docket 51 at Pg. ID #309. To the extent that Taylor disagrees with the medical treatment he received after the incident, such disagreement is insufficient to establish deliberate indifference to his alleged medical needs. *See Green v. Correct Care Solutions*, 2016 WL 1578841, at *7 (M.D. Tenn. March 25, 2016) ("[T]he Eighth Amendment guarantees that a prisoner will receive adequate medical care, not the medical care of his choice.").

The gist of Taylor's deliberate indifference claim seems to be that he experienced a delay in receiving additional medical attention between the time his cellmate allegedly sought assistance for him on September 20, 2021, and the time he received additional medical attention the following day, September 21, 2021.[2] Docket 59 at pp. 15-17. Taylor's contention that defendants prevented him from receiving medical attention on September 20, 2021, is contradicted by the evidence. Mitchell and Murray attested that they did not specifically recall Taylor requesting medical

---

[2] The date given in the referenced document is 9/21/23, it is undisputed that the events giving rise to this action occurred in September 2021.

treatment on September 20, 2021, but had he done so, they would have instructed him to submit a Sick Call Request. Docket Nos. 52 and 53 at p. 3. Likewise, if any medical need was urgent, they would have called a medical emergency in order to secure immediate medical treatment for Taylor. *Id.* Both attested that Taylor, however, did not request emergency medical treatment from them nor did Taylor demonstrate signs or symptoms that he needed emergency medical treatment. *Id.*

As to Taylor's sick call request on September 21, 2021, Taylor was seen by medical personnel that day and was provided antibiotic ointment for his facial abrasions. Docket 51 at Pg. ID #310. X-rays to rule out facial fractures were ordered and taken one week later and came back negative. *Id.* Taylor was seen by medical personnel for follow up on October 19, 2021, one month later; he had no facial numbness, bleeding, or vision issues, and was in no acute distress. *Id.*

The record refutes Taylor's claim that he was delayed in receiving additional medical treatment. Rather, the evidence shows he received prompt and appropriate medical treatment for his injuries. *Cf. Anthony v. Swanson*, 701 Fed. Appx. 460, 464 (6th Cir. 2017) (additional or different medical treatment does not "by itself suffice to support an Eighth Amendment claim.").

On summary judgment, when a deliberate indifference claim is based on a delay in receiving additional treatment, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). Taylor has not offered any verifying medical evidence, such as an expert opinion, demonstrating that any delay in receiving additional medical treatment caused his condition to worsen. Nor were there any ongoing medical issues noted during follow up one month later. Docket No. 51, Ex. E. In the absence of such verifying medical evidence, Taylor has failed to raise a genuine issue of fact on an essential element of his claim.

Moreover, there is no evidence to demonstrate that either Mitchell or Murray acted with a

sufficiently culpable state of mind to meet the subjective component of a deliberate indifference to medical needs claim. Even assuming Taylor notified Mitchell and Murray on September 19 that he needed additional medical treatment, the evidence on this record do not demonstrate that either Mitchel or Murray ever drew the inference that there was a strong likelihood Taylor was at serious risk of harm. *See Shannon v. Risper*, 2021 WL 1316704, at * 3 (M.D. Tenn. Apr. 8, 2021) (known risk of injury must have been a strong likelihood, rather than a mere possibility, before an official's failure to act can constitute deliberate indifference). There is no record evidence suggesting that Mitchell or Murray believed Taylor was suffering from any physical injuries that required immediate attention after being place in segregation. Docket No. 52, ¶ 15; Docket No. 53, ¶ 15. Nothing in the record evidence suggests that Mitchell or Murray prevented Taylor from obtaining treatment through the medical unit to address his alleged medical needs or that treatment was unavailable to him. The record demonstrates Taylor used the sick call procedure and received medical attention the same day. Docket No. 51 at Ex. E.

Based on the foregoing the undersigned concludes Taylor has failed to present a genuine factual dispute as to whether defendants acted with deliberate indifference to his medical needs following Taylor's placement in segregation. Accordingly, the undersigned recommends Mitchell and Murray be granted summary judgment on Taylor's deliberate indifference to medical needs claims.

### III. CONCLUSION

For the foregoing reasons, the undersigned recommends that defendants' motion for summary judgment be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**